UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRADLEY PETERSON, | :<br>:<br>: |
| Plaintiff, | : Civil Action No. 11-2594 (FLW)(DEA) |
| v. | :<br>: **MEMORANDUM OPINION**<br>: **AND ORDER** |
| ALBERT MATLOCK, *et al.*, | : |
| Defendants. | : |

ARPERT, Magistrate Judge

This matter comes before the Court on a Motion by Plaintiff Bradley Peterson seeking to compel Defendants to produce Plaintiff's electronically stored medical records in "native readable format" pursuant to Federal Rule of Civil Procedure 34 [Dkt. No. 101]. Defendants oppose Plaintiff's Motion [Dkt. No. 105]. For the reasons set forth below, Plaintiff's Motion is DENIED.

**I.    BACKGROUND**

The parties are familiar with the history of this case and the facts pertaining to the present Motion. Accordingly, the Court will not recite them at length. The allegations in Plaintiff's Amended Complaint arise from an event alleged to have occurred while Plaintiff was in the custody of the New Jersey Department of Corrections ("DOC") at the New Jersey State Prison in Trenton. According to Plaintiff, on July 13, 2010, he was beaten by several correctional officers while restrained with handcuffs. In addition to his claims against the correctional officers alleged to have beaten Plaintiff, Plaintiff alleges that additional officers and supervisors failed to

1

intervene and then entered into agreement to conceal the event. On March 25, 2011, Defendants Alaimo and Newsome were indicted in Mercer County on charges arising from Plaintiff's alleged assault. On November 7, 2011, the Court entered an Order staying this matter pending the outcome of the criminal proceedings against Defendants Alaimo and Newsome [Dkt. No. 37]. The criminal charges against Defendants Alaimo and Newsome have since been dismissed or resolved and the Court lifted the stay, with consent of all parties, on February 28, 2013 [Dkt. No. 54].[1]

Plaintiff filed the present Motion to compel on September 15, 2014, seeking the production of his medical records either in their native format with the required software reader or broken down into "searchable headings." Dkt. No. 101 at p. 2. Plaintiff's medical records were previously provided in a PDF file organized in reverse chronological order, which Plaintiff claims renders the records difficult to navigate and interpret. Defendants oppose Plaintiff's Motion and argue that the form in which Plaintiff's records were provided is the standard output and method of production and that to produce the records in the form requested by Plaintiff would significantly burden the DOC.

## II. DISCUSSION

The production of electronically stored information ("ESI") is governed by Federal Rule of Civil Procedure 34. Under Rule 34(b), a request for ESI may specify the form in which the information is to be produced, and the producing party must provide the records "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(1)(E). When the requesting party specifies the form of production, the responding party must either produce the documents in the form specified or

---

[1] The charges against Defendant Alaimo were dismissed in their entirety and the charges against Defendant Newsome were resolved by his conditional acceptance into the Pretrial Intervention Program.

2

object. *Romero v. Allstate Ins. Co.,* 271 F.R.D. 96, 107 (E.D. Pa. 2010). The burden "rests with the party objecting to the production of metadata or ESI to show undue hardship or expense." *Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc.,* 2010 WL 4973317, at *13 (M.D. Pa. Dec. 1, 2010) (citations omitted).

    The DOC uses the software program Centricity for the maintenance and storage of all inmate medical records. Plaintiff claims that while the PDF record provided by Defendants "is electronic in the sense that it is viewable on any computer with Adobe software, it is not the view that the medical provider views rendering care" through the Centricity program. Dkt. No. 101 at p. 1. According to Plaintiff, when provided in PDF format, the record is missing "the functionality, searchable data points, and metadata which are part of the electronic medical record and are available to a provider . . . using Centricity." *Id.* at p. 3. Additionally, Plaintiff claims that the PDF record is missing metadata stored in Centricity in the form of an "audit trail" which records changes or additions to the record.

    In objecting to Plaintiff's request, Defendants assert that the "manner in which [the records] are stored in Centricity is dictated by the software developer, General Electric, and cannot be modified by the end user." Dkt. No. 105 at p. 2. As a result of the limited control of the end-user over the manner in which the records are stored, Defendants claim that they are unable to change the format of inmate medical records or produce them in piecemeal fashion or chart format. Defendants argue that providing inmate medical records in chart format and organized into various categories as they are viewed through Centricity "would be an inordinate drain of time and manpower" because staff from the DOC would be required to "sort through each page of the medical record and make the determination as to which category it fits into." *Id.* at p. 3.

Defendants do not object to Plaintiff's request for the metadata contained in the audit trail, but argue that "[w]hile an 'audit trial' does exist and can be produced, it does not exist in the detail Plaintiff has requested." *Id.* at 4. Plaintiff claims that the audit trail records "direct evidence of exactly what was done, when, and by whom, to a patient's medical record." Dkt. No. 101 at p. 3. However, according to Defendants, the audit information provides "details of what a user did while logged on but not who logged on." Dkt. No. 105 at p. 4. While Defendants do not object to providing the metadata contained in the audit trail to Plaintiff, the Centricity program was recently updated and Defendants claim that at this time, they are unable to provide the data due to issues arising from the upgrade. Accordingly, Defendants have agreed to provide the available metadata as soon as it is possible to do so.

While Plaintiff claims the record as provided in PDF format is difficult to interpret and navigate, Defendants have demonstrated that they would suffer an undue burden in complying with Plaintiff's request to provide the records in their native format. Although the PDF record provided may be less convenient for Plaintiff, requiring staff from the DOC to sort and identify each page of every inmate medical record would create a substantial hardship and/or expense, which outweighs Plaintiff's interests in receiving the records in their native format. *See Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2010 WL 2104639, at *7 (W.D. Pa. May 24, 2010) ("Although a clear showing of undue hardship and/or expense may excuse Defendants' production in native format, the fact that such a production may be more useful or cause less expense to Plaintiffs obviously will not."). Accordingly, the Court finds that Defendants have fulfilled their obligation with respect to the production of Plaintiff's medical records

### III.     CONCLUSION

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 29th day of October, 2014,

**ORDERED** that Plaintiff's Motion to compel the production of his electronic medical record in its native format [Dkt. No. 101] is **DENIED**; and it is further

**ORDERED** that Defendants shall provide Plaintiff with the metadata contained in the audit trail as soon as it becomes available.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge