**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                           :

BRADLEY C. PETERSON,           :
                           :

            Plaintiff,   :

                           :     Civil Action No. 11-2594 (FLW)

            v.         :

                           :     **OPINION**

ADMINISTRATOR CHRISTOPHER    :
HOLMES, et al.,                :
                           :

           Defendants.   :
_____:

**<u>WOLFSON</u>**, **<u>United States District Judge</u>:**

Plaintiff Bradley C. Peterson ("Plaintiff") initiated this action against Administrator Christopher Holmes, Chief James Keil, Captain R. Ortiz, Lieutenant Stephen Alaimo, Sergeant Mark Perkins, Sergeant Keith Newsom, Christopher Israel, Nathan Gundy, Daniel Powell, M. Lashley, Damien Albanese, Albert Matlock, Reginald Lewis, J. Barnes III, P. Fisher, John Doe Corrections Officers 1-10, and John Doe Supervisors 1-10 (collectively, "Defendants"), following an altercation between Plaintiff and several employees of the New Jersey Department of Corrections ("NJDOC"), while Plaintiff was an inmate at the New Jersey State Prison ("NJSP"). In his Complaint ("First Amended Complaint"), Plaintiff asserts civil rights claims, pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), for excessive force, failure to intervene, conspiracy, and supervisory liability, as well as claims arising under state law. Presently before the Court is a Motion for Summary Judgment filed by Plaintiff, seeking to impose liability against individual Defendant Keith Newsom, on the ground that collateral estoppel precludes Defendant Newsom from relitigating factual findings rendered by

1

an Administrative Law Judge in a prior disciplinary action against Newsom.  Defendant Newsom

has filed opposition to Plaintiff's Motion, which was joined by co-defendant Stephen Alaimo.

For the reasons that follow, the Court concludes that the application of collateral estoppel is not

warranted here, and Plaintiff's Motion for Summary Judgment is DENIED.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This matter arises out of an incident that occurred on July 13, 2010, at the NJSP.  At the

time of the alleged incident, Plaintiff was an inmate housed on Unit 3 Left.  (Plaintiff's

Statement of Undisputed Material Facts ("Pl.'s Facts"), ¶ 2).

At approximately 8:00 a.m. on the morning of July 13, 2010, Officers Albert Matlock and

Reginald Lewis released Plaintiff from his cell for outside recreation.  (*Id*. at ¶ 3).  As Plaintiff

exited his cell, Officer Lewis instructed him to tuck in his shirt, and a physical altercation

erupted between Plaintiff and Officers Matlock and Lewis.  (Pl.'s Resp. to Defs.' Facts, ¶ 4).[2]

Officers Matlock and Lewis called in a Code 33, signifying to other officers that emergency

assistance was needed.  (Pl.'s Facts, ¶ 4).  Plaintiff scampered under a nearby staircase to hide

while additional officers arrived on the scene.  (*Id.* at ¶ 4-5).

The parties diverge as to who instigated the initial altercation, and on the sequence of

events occurring thereafter.  Plaintiff alleges that Officer Lewis attempted to throw a punch at

Plaintiff's head contemporaneously with his request that Plaintiff tuck in his shirt.  (Pl.'s Resp. to

Defs.' Facts, ¶ 4).  Plaintiff claims that after he dodged Lewis' punch, he observed Officer

---

[1] The Court only recounts the facts necessary for resolution of this Motion.  All facts are
undisputed unless otherwise noted.

[2] In Plaintiff's Statement of Material Facts, he incorporates by reference his prior
Counterstatement of Material Facts ("Pl.'s Resp. to Defs.' Facts") from Plaintiff's Opposition to
Defendants' prior Motion for Summary Judgment.  (Pl.'s Facts, ¶ 1).  Accordingly, the Court, on
this Motion, will consider that document, as well.

Matlock swing for his face. (*Id.*). According to Plaintiff, he was tripped from behind as he attempted to move towards the door of his cell, and Officers Matlock and Lewis landed a flurry of punches to his face as he fell to the floor. (*Id.*).

Next, Plaintiff alleges that upon hearing the call for a Code 33, he hid under a nearby staircase to protect himself while waiting for a supervisor to arrive. (*Id.* at ¶ 5). Plaintiff claims that Officer Albanese was the first person to respond to the Code 33, and, upon arriving on the scene, Albanese called for Plaintiff to emerge from under the stairwell. (*Id.* at ¶ 6-7). When Plaintiff refused to come out, Officer Albanese allegedly struck him on the legs. (*Id.* at ¶ 7). As other officers arrived on the scene, Plaintiff alleges that he was pulled out from under the staircase, flipped onto his stomach, and handcuffed. (*Id.* at ¶ 8, 16). Plaintiff avers that he continued to be beaten following his emergence from the stairwell. (*Id.* at ¶ 8-9). In that regard, Plaintiff testified in his deposition that he suffered numerous blows by way of baton and foot, and that the most damaging blow occurred after he had already been restrained. (*Id.* at ¶ 9-10). He did not, however, testify as to whether Defendant Newsom struck him. (*See* Pl.'s Dep. at 45:13-22; 46:17-23). Rather, Plaintiff relies on the testimony of Officer Israel to allege that after Plaintiff was handcuffed, Defendant Newsom struck Plaintiff in the forehead twice with an expandable baton. (Pl.'s Facts, ¶ 9-10). Plaintiff further avers that Defendant Newsom then directed Officer Israel to falsify a Special Custody Report regarding the incident. (*Id.* at ¶ 11).

Defendant Newsom's version of the facts stands in stark contrast. In particular, Defendant Newsom testified that Plaintiff provoked the altercation with Officers Matlock and Lewis. (Def. Newsom's Counterstatement of Material Facts ("CSMF"), ¶ 9). Additionally, Defendant Newsom denies striking Plaintiff in the head with an expandable baton while Plaintiff

was restrained. (*Id*. at ¶ 10). Defendant Newsom also denies that he directed Officer Israel to falsify the Special Custody Report. (*Id.* at ¶ 11).

On January 9, 2013, Plaintiff filed the First Amended Complaint.[3] On December 30, 2014, while Plaintiff's civil action was pending, the NJDOC issued a Final Notice of Disciplinary Action ("FNDA") against Defendant Newsom, removing him from his position of employment as a Corrections Sergeant. Defendant Newsom appealed his removal to the Civil Service Commission on January 23, 2015. Thereafter, the Civil Service Commission transferred Defendant Newsom's disciplinary matter to the New Jersey Office of Administrative Law ("OAL") for adjudication, and the case was assigned to the Honorable Joseph A. Ascione, an Administrative Law Judge of the OAL (the "ALJ").

In the case before the ALJ, the NJDOC brought the following disciplinary charges against Defendant Newsom: Conduct Unbecoming a Public Employee, N.J.A.C. 4A:2-2.3(a)(6); Other Sufficient Cause, N.J.A.C. 4A:2-2.3(a)(11); C.11 Conduct Unbecoming an Employee, HRB 84-17; C.3 Physical or Mental Abuse of an Inmate, Patient, Client, Resident or Employee; and C.5 Inappropriate Physical Contact or Mistreatment of an Inmate, Patient, Client, Resident, or Employee, HRB 84-17. The ALJ conducted hearings in the administrative matter over the course of eight days, beginning on August 10, 2015, and concluding on October 15, 2015. While Defendant Newsom and multiple officers testified in the administrative proceedings, Plaintiff did not testify at the hearings.[4]

---

[3] The specific Counts of the First Amended Complaint are addressed, *infra*.

[4] Specifically, the NJDOC offered testimony from the following individuals: Senior Correction Officer Albert Matlock; Senior Correction Officer Reginald Lewis; Senior Correction Officer Damian Albanese; Senior Correction Officer Nathan Gundy; Senior Correction Officer Christopher Israel; Senior Correction Officer Michael Wohlfert; Lieutenant Marvin Ganesh; Lieutenant Mark Perkins; Leigh Johnson; Lieutenant Karen Ortman; Associate Administrator Antonio Campos; and Dr. Jonathan Briskin. Defendant Newsom testified on his own behalf, and

In an opinion dated February 24, 2016, the ALJ sustained the charges of Conduct

Unbecoming a Public Employee and Other Sufficient Cause, and affirmed Defendant Newsom's

removal from employment with the NJDOC.  Specifically, the ALJ made the following findings

of fact:

> 1.  [Plaintiff's] injuries were caused by more force than fist impacts to his facial area.
>
> 2.  [Plaintiff's] injuries were not caused by a kick to the facial area.
>
> 3.  After [Plaintiff] had been restrained in handcuffs and leg shackles, and no longer presented a threat to Newsom or other prisoner personnel, Israel saw Newsom strike [Plaintiff's] facial area two times with his [expandable baton].
>
> 4.  Israel did not include this observation on his initial [Special Custody Report], as Newsom advised him to limit his report to the escort portion of his incident.
>
> 5.  [Senior Correction Officer Nathan] Gundy's report to the prosecutor acknowledged the contact made between Newsom's [expandable baton] and [Plaintiff's] face, after which [Plaintiff's] bleeding increased profusely.
>
> 6.  Newsom's striking of [Plaintiff's] face with his [expandable baton] constitutes the use of deadly force.
>
> 7.  [Senior Correction Officer Albert] Matlock's altercation with [Plaintiff] may have resulted in some injury to Plaintiff's face; however, Newsom's striking of [Plaintiff's] face with his [expandable baton] resulted in additional extensive injury.

(Kevin Newsom, OAL Dkt. No. CSR 01620-15, 23 (OAL Feb. 24, 2016) (A.L.J. Ascione)

("A.L.J. Op.")).  Based on those findings and his review of the testimony presented in the case,

the ALJ concluded that "the preponderance of competent and credible evidence has established

that [Newsom] violated both N.J.A.C. 4A:2-2.3(a)(6) and N.J.A.C. 4A:2-2.3(a)(11) by striking in

the face the handcuffed, leg-shackled, and restrained [Plaintiff] with his [expandable baton]."

---

also presented the testimony of:  Senior Correction Officer David B. Lewis; Senior Correction Officer Jesse Barnes, III; Senior Correction Officer Phillip Fisher; Lieutenant DeWitt Gamble; Major Stephen Alaimo; Senior Correction Officer Robert McCormack; and Dr. Randy Tartacoff. Plaintiff was not available to testify at the administrative hearings due to his incarceration.  (See Kevin Newsom, OAL Dkt. No. CSR 01620-15, 19 (OAL Feb. 24, 2016) (A.L.J. Ascione)).

(*Id.* at 25).  Pursuant to N.J.A.C. 40A:14-204, the ALJ's decision became final on April 25, 2016.

On January 8, 2016, Defendant Alaimo moved for summary judgment as to all claims against him.  (ECF No. 125).  Defendants Holmes, Ortiz, Perkins, Albanese, Barnes, Fisher, Gundy, Israel, Lashley, Lewis, Matlock, and Powell (collectively, the "State Defendants") moved for summary judgment as to all claims against them on January 9, 2016.  (ECF No. 126).  Additionally, Defendant Keil moved for summary judgment on January 15, 2015.  (ECF No. 130).  Plaintiff filed opposition to all three motions on February 23, 2016.  (ECF No. 140).  Defendant Alaimo and the State Defendants filed their respective reply briefs on March 1, 2016, and Defendant Keil filed his reply brief on March 2, 2014.  (ECF Nos. 142-44).  On August 30, 2016, the Court issued an Opinion resolving the three motions.  Pursuant to that Opinion, the only Counts remaining in Plaintiff's First Amended Complaint are as follows:  (i) a § 1983 claim for excessive force, contrary to the Eight Amendment of the United States Constitution, against Defendants Matlock, Lewis, Albanese, Newsom, and Perkins; (ii) a NJCRA claim for failure to intervene against Defendants Matlock, Lewis, Albanese, Israel, Barnes, Gundy, Lashley, Fisher, Perkins, Powell, Alaimo, and Newsom; and (iii) a § 1983 claim for failure to intervene, in violation of the Eighth Amendment, against Defendants Matlock, Lewis, Albanese, Israel, Barnes, Gundy, Lashley, Fisher, Perkins, Powell, Alaimo, and Newsom.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  The moving party bears the burden of

demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322.

Once the moving party has satisfied this initial burden, the opposing party must identify "specific

facts which demonstrate that there exists a genuine issue for trial." *Orson*, 79 F.3d at 1366.

Not every issue of fact is sufficient to defeat a motion for summary judgment; issues of

fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the

nonmoving party cannot rest upon mere allegations; he must present actual evidence that creates

a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249 (citing

*First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). In conducting a review of the

facts, the nonmoving party is entitled to all reasonable inferences and the record is construed in

the light most favorable to that party. *See Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d

860, 864 (3d Cir. 1986). Accordingly, it is not the Court's role to make findings of fact, but to

analyze the facts presented and determine if a reasonable jury could return a verdict for the

nonmoving party. *See Brooks v. Kyler*, 204 F.3d 102, 105, n.5 (3d Cir. 2000) (citing *Anderson*,

477 U.S. at 249); *Big Apple BMW v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

Plaintiff moves for summary judgment against Defendant Newsom, arguing that the

Court should apply collateral estoppel with respect to the factual findings of the ALJ in the

disciplinary proceeding against Defendant Newsom, and that the ALJ's findings regarding

Defendant Newsom's use of force entitle Plaintiff to summary judgment on his Eighth

Amendment claims against Defendant Newsom.[5]

---

[5] Plaintiff maintains that the ALJ's findings, if accepted by this Court, constitute excessive force.
However, because the Court finds that collateral estoppel is not warranted in this case, it need not
reach those issues for the purposes of the present Motion.

The doctrine of collateral estoppel, or issue preclusion, prevents a party from relitigating issues that were adjudicated in a prior lawsuit. *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel exists to promote judicial consistency, encourage reliance on court decisions, and protect defendants from being forced to relitigate the same issues in multiple lawsuits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

In general, federal courts accord preclusive effect to the adjudications of both state and federal administrative tribunals, so long as two requirements are met. First, the administrative tribunal must have have acted "in a judicial capacity," resolved issues properly before it, and must provide the party against whom estoppel is asserted with a "full and fair opportunity" to litigate his claims, *e.g.*, provide that party "ample opportunity to present his views and to cross-examine the witnesses against him." *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192 (3d Cir. 1993). Second, pursuant to the Full Faith and Credit Clause, 28 U.S.C. § 1738, the federal court must look to the law of the adjudicating state to determine if a state court would accord the judgment of the administrative tribunal preclusive effect. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999).

Nonetheless, while the Supreme Court has recognized that issue preclusion applies to the decisions of state and federal agencies, acting in a judicial capacity, *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991), the Court has cautioned that the suitability of applying administrative collateral estoppel "may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Id.* at 110. In section 1983 cases, such as the present matter, where an agency's ruling is not reviewed by a state court, collateral estoppel is limited to administrative fact-finding. *Edmundson*, 4 F.3d at 189 ("[I]n section 1983 cases, only state administrative factfinding is entitled to preclusive

effect in the federal courts when the agency ruling remains unreviewed by state courts."). The Court will turn next to each of those requirements.

### A. The Administrative Law Judge Acted in a Judicial Capacity

First, there is no dispute that the ALJ acted in a judicial capacity in the administrative proceeding when he found that Defendant Newsom violated N.J.A.C. 4A:2-2.3(a)(6) and N.J.A.C. 4A:2-2.3(a)(11). While Plaintiff was a non-party to the administrative proceedings, in determining whether the ALJ acted in a judicial capacity, the Court looks to the nature of the proceeding. Here, the ALJ heard testimony from more than twenty witnesses over eight days of hearings, and provided opportunity for the participating parties to advocate their respective positions. *See O'Hara v. Board of Education*, 590 F. Supp. 696, 701 (D.N.J. 1984) (finding that an agency acted in a judicial capacity where it "had a full hearing and provided an opportunity for both parties to appear and be represented by counsel, to present evidence and to call, examine and cross-examine witnesses."). Following the hearing, the ALJ issued findings of fact and determined that Defendant Newsom violated N.J.A.C. 4A:2-2.3(a)(6) and (a)(11). Thus, the ALJ acted in a judicial capacity by employing the aforementioned procedures and resolving disputes of fact and law properly before him.

### B. Collateral Estoppel Under New Jersey Law

Second, because the administrative proceeding in this case took place in New Jersey, the Court must determine whether a New Jersey state court would accord the ALJ's ruling preclusive effect. Under New Jersey law, a party seeking to invoke the doctrine of collateral estoppel must demonstrate that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential

to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *Wildoner v. Borough of Ramsey*, 316 N.J. Super. 487, 506 (App. Div. 1998) (citing *In re Dawson*, 136 N.J. 1, 20 (1994)). In this case, Defendant Newsom concedes that only factors two and five remain in dispute.[6] Applying those factors to the present matter, the Court finds that collateral estoppel does not apply to the ALJ's findings.

### 1.    *The Issues Were Not Actually Litigated in the Prior Proceeding*

Defendant Newsom argues that the Court should not invoke collateral estoppel in this case, because the issues decided before the administrative tribunal were not "actually litigated" in that forum. Under New Jersey law governing collateral estoppel, an issue is "actually litigated" where the party against whom the doctrine is applied had a "full and fair opportunity to litigate the issue in the prior proceeding." *See Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 204 (3d Cir. 2004) (quoting *Pace v. Kuchinsky*, 347 N.J. Super. 202, 214 (App. Div. 2002)). This is satisfied when a party had the opportunity to present his or her evidence to a competent tribunal. *See Edmundson*, 4 F.3d at 192 (finding that the plaintiff was given a full and fair opportunity to litigate an issue, where the administrative tribunal "gave plaintiff ample opportunity to present his views and to cross-examine the witnesses against him."). Defendant Newsom argues that the "actually litigated" requirement is not satisfied here, since Plaintiff was not available to testify at the administrative hearings, and as such, Defendant Newsom contends that he was deprived of the ability to cross-examine Plaintiff. I agree.

This Court cannot find, based on the record of the administrative proceedings before it, that the issue of whether Defendant Newsom used excessive force was "actually litigated" before

---

[6] *See* Def.'s Opp'n to Pl.'s Mot. for Summ. J. 15 ("In this case, Plaintiff is unable to satisfy two (2) of the requirements for issue preclusion to be applied."). As such, the Court will not address factors one, three, and four.

the ALJ.  While the ALJ heard testimony from various individuals, he rendered his findings of

fact without considering the testimony of Plaintiff.  Plaintiff was incarcerated at the time of the

administrative hearings, and has provided no evidence that either the NJDOC or Defendant

Newsom sought to compel him to testify before the ALJ.  Additionally, the ALJ excluded

Plaintiff's deposition testimony, which was given in the present matter, reasoning that the

testimony had been obtained when the State was represented by different counsel.  (*See* A.L.J.

Op., at 19).  The fact that Plaintiff was not present at the administrative proceedings to testify is

probative to the assessment of the "actually litigated" element.

Indeed, Defendant Newsom's inability to question or cross-examine Plaintiff, or provide

Plaintiff's deposition testimony, supports a finding that the issue of whether Defendant Newsom

struck Plaintiff in the facial area with an expandable baton was not "actually litigated."

Tellingly, Plaintiff's deposition testimony given in this case regarding the alleged incident was

equivocal.  Specifically, Plaintiff testified that he recalled being struck in the facial area with

fists and kicks, as well as to the *body* by fists, kicks, and batons, but, importantly, Plaintiff did

not testify that he was struck in the *facial* area by way of baton.  (*See* Pl.'s Dep. at 27:5-29:19;

237:24-238:5).  Additionally, Plaintiff had difficulty pinpointing any specific blow to his head,

let alone identifying that it was Defendant Newsom that severely hit Plaintiff with a baton.  (*See*

Pl.'s Dep. at 31:3-8).  In fact, Plaintiff admitted that he did not recall being struck by Defendant

Newsom specifically, and that he only included Defendant Newsom in his Complaint because

Newsom was an area supervisor.  (Pl.'s Dep. at 45:13-22; 46:17-23).  Absent an opportunity to

question or cross-examine Plaintiff on those assertions, which might have been beneficial to

Defendant Newsom's position, the Court cannot find that the issue of excessive force was

"actually litigated."

Additionally, the ALJ rejected the opinion of Defendant Newsom's expert, Randy S. Tartacoff, M.D., on the grounds that Dr. Tartacoff relied on the deposition testimony of Plaintiff, which the ALJ elected not to consider. (A.L.J. Op. at 19) ("Dr. Tartacoff noted in his opinion that he relied on [Plaintiff's] testimony; for the reasons set forth above, that testimony cannot be relied upon, and Dr. Tartacoff's opinion that [Plaintiff's] Y-shaped facial injuries resulted from a fist or boot is not accepted.").[7] Rather, the ALJ accepted the opinion of the NJDOC's expert, Johnathan A. Briskin, M.D., that Plaintiff's facial injuries resulted from being struck with an expandable baton, rather than a fist or boot. (*See* A.L.J. Op. at 18) ("Dr. Briskin did note that he received no evidence that any boot was involved in the injury to [Plaintiff]. For that reason, I accept Dr. Briskin's opinion that the injury to [Plaintiff's] face resulted from being struck with an [expandable baton]."). Had the ALJ considered Plaintiff's testimony during the administrative proceedings, the ALJ might have reached a different conclusion regarding whether Defendant Newsom struck Plaintiff in the facial area with a baton, or whether to reject Dr. Tartacoff's expert opinions. Thus, the Court finds that the issue of whether Defendant Newsom used excessive force was not "actually litigated" before the ALJ.

Furthermore, while Plaintiff maintains that Defendant's arguments against the invocation of collateral estoppel are foreclosed by *Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67 (2012), that case is inapposite. In *Winters*, the Supreme Court of New Jersey was tasked with determining whether an employee was precluded from pursuing a retaliatory discharge claim against his employer, after an administrative tribunal had previously ruled that the employee's dismissal for conduct unbecoming an employee was proper. 212 N.J. at 81-83. The employee

---

[7] In opining that Plaintiff's facial injuries resulted from fist or boot impact, Dr. Tartacoff relied upon Plaintiff's testimony that he was kicked "all over [his] body including [his] face" while he was handcuffed and shackled. (Pl.'s Dep. at 244:11-246:10).

argued that collateral estoppel was not applicable, because the issue of employer retaliation had

not been expressly litigated in the administrative proceeding, although such a claim was raised in

that forum. *See id*. at 82. In other words, the employee maintained that because he did not

zealously pursue his retaliation claim before the administrative tribunal, it was not "actually

litigated." *See id.* The Court disagreed and held that the employee was estopped from

proceeding with his retaliation claim. *Id.* at 92. Specifically, the Court found that the employee

had "fairly been determined to have no entitlement to be returned to his position after a full

opportunity to litigate the charges against him and the defense of retaliation that he posed,"

because the administrative law judge conducted full hearings, where the employee raised the

issue of retaliation, albeit indirectly and without the support of proofs. *Id.* at 90-92. The Court

focused on the fact that the employee initially raised the retaliation claim before the

administrative tribunal, but declined to pursue that claim. *See id.* at 88 ("[Plaintiff] cannot take

advantage of his own tactic of throttling back on his claim of retaliation in the administrative

proceeding after having initially raised it. Retaliation was a central theme of his argument and

that he chose not to present there his comprehensive proof of that claim does not afford him a

second bite at the apple in this matter.").

      *Winters* is factually distinguishable from the present matter. In *Winters*, the employee

did not challenge the procedural sufficiency of the administrative proceedings. *See id.* at 88 ("In

this case, plaintiff has not challenged the procedural sufficiency of the civil service proceedings.

. . . Indeed, he concedes that he was afforded full hearings with all of the protections of due

process, such as are provided litigants in a court of law."). Indeed, the fact that the employee had

the opportunity to litigate his claim before the administrative tribunal, but made a strategic

decision to not aggressively do so, was central to the Court's decision. By contrast, here, the

procedural sufficiency of the administrative proceedings is directly at issue, in light of the fact

that Plaintiff did not testify before that tribunal, precluding Defendant Newsom from cross-

examining Plaintiff.  Moreover, unlike *Winters*, here, co-defendants Alaimo, Albanese, Gundy,

Lashley, Fisher, Perkins, and Israel ("Co-Defendants") did not have the opportunity to

participate in the administrative proceeding, other than as witnesses.[8]  Indeed, although the

*Winters* Court recognized that, in general, "courts will accord administrative rulings that

otherwise satisfy collateral estoppel standards preclusive effect," *id.* at 87, it cautioned that those

proceedings must "provide 'significant procedural and substantive safeguards,' similar to those

that are provided to litigants in courts of law."  *Id.* (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 186

N.J. 511, 524 (2006)). Accordingly, the Court finds that the facts underlying the *Winters* decision

are distinguishable from this case.[9]

In short, the Court finds that Plaintiff has failed to meet his burden of establishing that the

issues were actually litigated in the prior proceeding.

### 2.    *Non-Mutuality of the Parties*

Next, Defendant Newsom argues that collateral estoppel does not apply, because neither

Plaintiff nor the remaining Co-Defendants in this case were parties in the underlying

administrative dispute.  Collateral estoppel applies "if the party against whom preclusion is

asserted was a party, or in privity with a party, to the proceeding."  *Perez v. Rent-A-Center, Inc.*,

186 N.J. 188, 199 (2006).  "Complete identity of parties in the two suits is not required for the

---

[8] For further discussion of Co-Defendants non-participation in the administrative proceedings,
*see* Section III(B)(2), *infra*.

[9] Furthermore, unlike the present case, *Winters* involved the use of defensive collateral estoppel
by a party to the original administrative proceeding, the employer.  By contrast, as discussed
further in Section III(B)(2), *infra*, this case involves the use of offensive collateral estoppel by
Plaintiff, a non-party to the administrative proceeding.

application of issue preclusion." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d

1227, 1232 (3d Cir. 1995).  Here, Plaintiff, who was not a party to the administrative action,

attempts to invoke issue preclusion against Defendant Newsom.  Such an application of issue

preclusion is referred to as "offensive, non-mutual collateral estoppel." *Id.*  Offensive collateral

estoppel was first recognized in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), and

"occurs whenever a plaintiff seeks to estop a defendant from relitigating an issue which the

defendant previously litigated and lost against another plaintiff." *Raytech Corp. v. White*, 54

F.3d 187, 196, n. 5 (3d Cir. 1995).[10]

In *Parklane Hosiery*, the Supreme Court explained the inherent problems in applying

offensive collateral estoppel.  Specifically, the *Parklane Hosiery* Court explained that the

offensive use of collateral estoppel "may be unfair to a defendant," because if "a defendant in the

first action is sued for small or nominal damages, he may have little incentive to defend

vigorously, particularly if future suits are not foreseeable." 439 U.S. at 330.  That concern is not

present here, however, since Defendant Newsom was defending a disciplinary proceeding that

would end his employment with the NJDOC.  Additionally, the Court acknowledged that

"another situation where it might be unfair to apply offensive estoppel is where the second action

affords the defendant procedural opportunities unavailable in the first action that could readily

cause a different result"; *e.g.*, where "the defendant in the first action was forced to defend in an

inconvenient forum and therefore was unable to engage in full scale discovery or call witnesses .

. . ." *Id.* at 330-31, n 15.  Recognizing those problems, the Supreme Court concluded that district

---

[10] The use of offensive collateral estoppel is "non-mutual" in this case, because Plaintiff is
seeking to bind Defendant Newsom to a judgment in a previous case – the administrative action
against Newsom – to which Plaintiff himself was not a participant or party. *See Raytech Corp*,
54 F.3d at 196.

courts have "broad discretion" in determining whether to apply offensive collateral estoppel. *Id.* at 331; *see also Smith v. Borough of Dunmore*, 516 F. App'x 194, 199 (3d Cir. 2013) (holding that although the technical requirements for collateral estoppel were met, it was not an abuse of discretion for the District Court to refuse to apply collateral estoppel).

Cognizant of that broad discretion, I find that the equities weigh against applying offensive collateral estoppel in this case. Importantly, the administrative hearing before the ALJ falls squarely within the concerns outlined in *Parklane Hosiery*, because Defendant Newsom was unable to cross-examine a key witness to his defense, Plaintiff. Without an adequate opportunity to question or cross-examine Plaintiff regarding the altercation, and to attack his credibility, Defendant Newsom was unable to mount a full defense in the administrative proceeding. Indeed, as I explained above, I cannot find that the issue of whether Defendant Newsom struck Plaintiff in the facial area with a baton was actually litigated, in light of the fact that Plaintiff's deposition testimony regarding the altercation was ambiguous, the ALJ refused to consider Plaintiff's deposition testimony, and as a result, would not consider the opinions of Defendant Newsom's expert, who relied on Plaintiff's deposition testimony. Thus, the Court finds that, based on the facts of this case, it would be patently unfair to accord Plaintiff the benefit of the administrative decision in the present action against Defendant Newsom.

Furthermore, Co-Defendants argue that the Court should not invoke collateral estoppel, on the grounds that Co-Defendants were not parties in the underlying administrative case. Specifically, Co-Defendants maintain that if they are precluded from relitigating the issue of whether Defendant Newsom used excessive force, this would necessarily impact the claim against Co-Defendants for their alleged failure to intervene. I agree.

16

"Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A police officer is liable for failure to intervene under § 1983 if the Plaintiff demonstrates that: (1) the officer had reason to know that excessive force was being used; and (2) the officer had a realistic opportunity to intervene. *See id*. at 650. To that end, where a plaintiff is unable to establish a claim for excessive force, he cannot establish a claim for failure to intervene. *Lora-Pena v. Denney*, 760 F. Supp. 2d 458, 468 (D. Del. 2011) ("[B]y definition, if there was no excessive force then there can be no failure to intervene.") (quoting *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005)).

Issue preclusion is inappropriate in this case because the party against whom preclusion is asserted is not simply Newsom, but also Co-Defendants, who were not parties in the administrative action, or in privity with a party to the administrative action. To that end, while Plaintiff moves for summary judgment on the basis of collateral estoppel against Defendant Newsom in this case, it is clear that the application of issue preclusion would adversely impact Co-Defendants. Indeed, Plaintiff seeks to preclude relitigation of the factual circumstances surrounding the alleged altercation between Plaintiff and Defendant Newsom, as well as on the ultimate issue of excessive force. By invoking collateral estoppel, Co-Defendants would be estopped from contesting the issue of whether force was used by Defendant Newsom; this determination is necessary to Plaintiff's *prima facie* case for failure to intervene. Moreover, the fact that Co-Defendants share an interest with Defendant Newsom with respect to the excessive force claim does not establish privity for the purposes of issue preclusion. *See Matter of Estate of Dawson*, 136 N.J. 1, 22 (1994) ("That the parties may have similar interest in the outcome of

17

the litigation . . . does not of itself establish privity of interest for purpose of issue preclusion.")

(quoting *Stegmeier v. St. Elizabeth Hosp.*, 239 N.J. Super. 475, 487 (App. Div. 1990)).

Accordingly, because Co-Defendants were not parties to the underlying action, the Court finds

that collateral estoppel is not warranted in this case.[11]

## IV. CONCLUSION

For the foregoing reasons, the Court finds collateral estoppel is not applicable in this case,

and thus, Plaintiff's Motion for Summary Judgment is DENIED.


Dated: May 2, 2017                                    /s/ Freda L. Wolfson
                                                      Hon. Freda L. Wolfson
                                                      United States District Judge

---

[11] Finally, even assuming that the elements of collateral estoppel are satisfied in this case –
which they are not – the Court finds that the equities weigh against invoking collateral estoppel.
Under New Jersey law, even where the five elements necessary to invoke collateral estoppel are
established, "the court retains discretion to grant or deny preclusion." *Mann v. Estate of Meyers*,
61 F. Supp. 3d 508, 518 (D.N.J. 2014). Indeed, as I explained above, where a party attempts to
invoke non-mutual collateral estoppel, courts are particularly concerned with reviewing whether
the application of collateral estoppel would be unfair. *See Raytech Corp.*, 54 F.3d at 195 ("The
Supreme Court has granted district courts 'broad discretion' to determine when a plaintiff who
has met the requisites for the application of collateral estoppel may employ that doctrine
offensively."). Without engaging in a more extensive recitation of the equitable reasons against
applying collateral estoppel, the Court finds that it would be unfair to invoke collateral estoppel
in this case for the reasons already expressed in this Opinion.